UNITED STATES DISTRICT COURT        
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

DAVID JOHNSON,

               Petitioner,                     MEMORANDUM
                                                             AND ORDER
                                                             08-CV-1268 (JG) (SMG)

        -against-

ROBERT ERCOLE, Superintendent,
Green Haven Correctional Facility,

               Respondent.

------------------------------------------------------------x

A P P E A R A N C E S :

        DAVID JOHNSON
             03-A-2144
             Green Haven Correctional Facility
             P.O. Box 4000
             Stormville, NY 12582
             Petitioner, *Pro Se*

        ANDREW M. CUOMO
             Attorney General of the
             State of New York
             120 Broadway
             New York, NY 10271
        By:    Lisa Fleischmann
             Priscilla Steward
             Attorneys for Respondent

JOHN GLEESON, United States District Judge:

        David Johnson, currently incarcerated in Green Haven Correctional Facility,

petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking relief from his

conviction in New York State Supreme Court on three counts of robbery in the first degree and

one count each of assault in the second degree, criminal possession of a weapon in the third

1

degree, and attempted escape in the first degree.  Johnson, appearing *pro se*, claims that evidence

of an unduly suggestive lineup was admitted against him at trial in violation of the due process

clauses of the Fifth and Fourteenth Amendments, and that the *Wade* hearing[1] at which Johnson

sought suppression of the line-up was defective because the government failed to introduce

testimony regarding the descriptions of the perpetrator given by the eyewitnesses to the

robberies.  Johnson also seeks leave to add a claim of ineffective assistance of trial counsel to his

petition and a stay of these proceedings while he exhausts that claim in state court.  For the

reasons stated below, I deny both Johnson's petition and his request to amend it.

BACKGROUND

A.      *The Crime and the Investigation*

The government's evidence at trial established that at approximately 6:50 PM on

July 8, 2001, Johnson, wearing dark sunglasses and a fisherman's hat, entered a Radio Shack

store located on 71st Avenue in Queens, New York.  He discussed laptop computers with Kacey

Williams, a Radio Shack employee, for approximately 20 minutes.  He also filled out an

application for a store credit card, which was denied.  Johnson then left the store, returned a few

minutes later and attempted to purchase a compact disc player from Williams.  When Williams

opened the cash register to give Johnson his change, Johnson removed a gun from the bag he was

carrying and ordered Williams to fill the bag with money.  After Williams did so, Johnson

warned him not to call the police and fled the store.  These events were also witnessed by

Emmanuel Valenciano, another Radio Shack employee.

---

[1]      Although *United States v. Wade* concerned the Sixth Amendment right to counsel at post-indictment identification procedures, 388 U.S. 218, 236-37 (1967), hearings challenging pre-indictment identification procedures as unduly suggestive under the due process clauses of the Fifth and Fourteenth Amendments are referred to as "*Wade* hearings."

On July 10, 2001, at approximately 8:30 PM, Johnson, again wearing a fisherman's hat and sunglasses, entered another Radio Shack located on Queens Boulevard. Johnson said he wished to buy a DVD player, and Radio Shack employee Jose Cadena went to the stockroom to retrieve the item. Another employee, Rosemarie Reese, remained with Johnson. A third employee, Tuffal Uddin, was also present. When Cadena returned, Johnson removed a gun from his bag and ordered Cadena to fill it with money. Johnson fled with $1,000.

On July 30, 2001, Johnson, this time wearing dreadlocked hair in addition to dark sunglasses and a fisherman's hat, entered a Radio Shack on Liberty Avenue in Queens. After purchasing a cell-phone adapter from employee Trevor Mahase, Johnson left the store. He returned minutes later, telling Mahase that he needed to purchase another adapter. As Mahase opened the cash register, Johnson pulled a gun out of his bag and ordered Mahase to fill the bag with money. Johnson then warned Mahase not to call the police, and left the store. Two of the store's surveillance cameras recorded the robbery.

Three days later, on August 2, 2001, Detective Leonard Webber and his partner, on a stakeout of a fourth Radio Shack, saw Johnson walk to the Radio Shack, look inside, and then enter a nearby video store. He was wearing dreadlocks, a fisherman's hat, and sunglasses, and carrying a white shopping bag, and the police noted that he resembled the person in the surveillance photos taken during the Liberty Avenue store robbery. Johnson left the video store and entered the rear passenger seat of a car with two occupants. As the car pulled away, Webber followed it and attempted to pull it over for a defective brake light. The car containing Johnson attempted to flee, ultimately colliding with another police vehicle. The police arrested Johnson

at the collision site, and recovered a black plastic gun, a blue fisherman's hat, a dreadlock wig, and two pairs of sunglasses from the rear passenger seat of the car.

On August 3, 2001, Detective Elizabeth Curio conducted a lineup involving Johnson. The lineup contained five fillers. All of the fillers were black males and, like Johnson, had facial hair. They were all within Johnson's age range. Three of the fillers were approximately 50 pounds lighter than Johnson, who weighed roughly 195 pounds and was 5'11'' tall at the time of his arrest. Tr. at 768-69. One filler weighed roughly 20 pounds less than Johnson and was 5'9'' tall. The final filler weighed 200 pounds and was 6'2'' tall. Uddin, Reese, Valenciano, and Mahase viewed the lineup, and each identified Johnson as the man who had robbed the store where he or she worked. After the lineup, Johnson, who had received his *Miranda* warnings, admitted that he was the person shown committing the robbery in the surveillance photographs from the Liberty Avenue Radio Shack.

B.      *The* Wade *Hearing and the Trial*

Johnson was indicted on three counts of robbery in the first degree and one count each of assault in the second degree and criminal possession of a weapon in the third degree.[2] An identification hearing was conducted on May 6, 2002 to determine whether the lineup identifications of Johnson were impermissibly suggestive. The trial judge denied Middleton's motion, ruling that the lineup's "composition was not suggestive," and stating that "there is no requirement that a defendant in a lineup must be surrounded by persons identical to him in appearance". Hearing Tr. at 43. The jury found Johnson guilty on all charges.

C.      *Appeal and Collateral Proceedings*

---

[2]      A charge of attempted escape in the first degree was added when, while being escorted to the courtroom for arraignment, Johnson struck one of the police officers accompanying him and ran out of the courtroom and toward a public exit. Trial Tr. at 518-520, 568-72.

On June 6, 2004, Johnson filed a motion under New York Criminal Procedure Law § 440.10, arguing, in relevant part, that the lineup was unduly suggestive. The New York Supreme Court in Queens County denied the motion, holding that there were sufficient facts on the record to permit adequate review on direct appeal. On direct appeal, the Appellate Division rejected petitioner's claim that the hearing court improperly denied his motion to suppress identification evidence, observing that "[t]here is no requirement that a defendant in a lineup be surrounded by individuals who are nearly identical to him in appearance," and that "[s]ince the lineup participants resembled [Johnson] in attire, hair color, skin tone, and age, minor variations in weight and height did not render the lineup impermissibly suggestive or conducive to mistaken identification, especially where the participants were sitting." *People v. Johnson*, 826 N.Y.2d 295 (2d Dep't 2006). On December 19, 2006, the New York Court of Appeals denied petitioner's application for leave to appeal. *People v. Johnson*, 7 N.Y.3d 925 (2006). This timely petition followed.

## DISCUSSION

A.    *Johnson's Motion to Hold His Petition in Abeyance*

Prior to oral argument on his petition, Johnson filed a letter requesting that his federal habeas petition be held in abeyance while he exhausts an ineffective assistance of counsel claim in state court. Because Johnson did not raise an ineffective assistance claim in his federal petition, I construed his letter as also seeking leave to amend his current petition to include this claim. I denied this motion for the reasons that follow.

When a petitioner seeks to add claims to a petition after the statute of limitations has expired, the new claims must "relate back" to the original petition. To do so, they must arise

5

out of the same "conduct, transaction, or occurrence." Fed. R. Civ. P. 15(c)(1)(B). That both

claims challenge the same conviction is not enough; an amendment will not relate back if it

"asserts a new ground for relief supported by facts that differ in both time and type from those

the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005).

Under this standard, Johnson's proposed amendment plainly fails to relate back to

his original petition. His original claim arises from a pre-indictment lineup. His proposed

ineffective assistance claim does not relate to the lineup; instead, Johnson argues that he did not

receive satisfactory advice regarding a plea bargain offered by the government. The facts

supporting each claim clearly differ in both time and type. Accordingly, relation back is

prohibited under *Mayle*.

Under the one-year statute of limitations for habeas petitions, 28 U.S.C. §

2244(d), Johnson's ineffective assistance claim is thus untimely. The limitations period for

Johnson's petition began running on March 19, 2007, when his time to seek a writ of certiorari

from the U.S. Supreme Court expired, thus finalizing his conviction.[3] *See Williams v. Artuz*, 237

F. 3d 147, 151 (2d Cir.). The limitation period expired on March 19, 2008, and Johnson first

raised his ineffective assistance claim in this Court over four months later, in his letter of July 29,

2008.

Johnson does not argue that the above calculus is inaccurate. Instead, he argues

that the limitation period should be equitably tolled because he only recently received the

assistance of a prison law clerk who brought the ineffective assistance claim to his attention.

Equitable tolling requires a petitioner to demonstrate both that extraordinary circumstances

---

[3]     There are other events which might start the limitations period running at a later date, *see* 28
U.S.C. § 2244(d)(1)(B)-(D), but none of them is relevant here.

prevented him from filing on time and that he acted with reasonable diligence during the period

he seeks to toll. *Smith v. McGinnes*, 208 F.3d 13, 17 (2d Cir. 2000). While the intentional

confiscation of a petitioner's legal papers by a corrections officer has been held to constitute an

extraordinary circumstance, *Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir. 2000), a prisoner has

no right to the services of a prison law clerk, and a lack of access to such services cannot be

deemed extraordinary. Indeed, to hold otherwise would eviscerate the limitations period

entirely.

B.      *Johnson's Current Petition*

     1.      *Review of State Adjudications on the Merits Under AEDPA*

A federal habeas court may overturn a state court's ruling on the merits of a claim

only if the state decision was "contrary to, or an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States," or "was based on an

unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d). A decision is "contrary to" clearly established federal law if

"the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a

question of law or if the state decides a case differently than [the Supreme Court] has on a set of

materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A decision is "an

unreasonable application" of clearly established federal law if a state court "identifies the correct

governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

principle to the facts of [a] prisoner's case." *Id.* at 413. An unreasonable application is more

incorrect than a merely erroneous one, *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001)

(citing *Williams*, 529 U.S. at 411), but while "[s]ome increment of incorrectness beyond error is

required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence," *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted)).

AEDPA's limited scope of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it refers to federal law in its decision. *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

2. *The Merits of Johnson's Claim*

Johnson suggests two ways in which the lineup violated his due process rights. First, he argues that the *Wade* hearing was defective because the government did not introduce evidence that would even allow the hearing court to determine whether the lineup was unduly suggestive. Johnson claims that, because "the prosecution failed to bring out the descriptions of the robber, as given by the witnesses at the Radio Shack stores . . . the Hearing Court had insufficient evidence to rule on the reasonableness of the police conduct with respect to the line-up, and the presence or absence of suggestiveness." Johnson Pet. at 6. This argument, which Johnson also raised on direct appeal, appears to rely on *People v. Ortiz*, 90 N.Y.2d 533 (1997), in which the New York Court of Appeals reaffirmed its holding that, in a hearing on the validity of a pre-trial identification, "the People have the initial burden of going forward to establish the reasonableness of the police conduct *and the lack of any undue suggestiveness* in a pretrial identification procedure." *Id.* at 537 (internal citation omitted).

This argument fails for two reasons. First, the rule of *Ortiz*, a decision which does not mention the federal constitution, appears to be a New York state procedural rule. A federal court may not grant habeas relief based on the state court's alleged misapplication of a state procedural rule. *See* 28 U.S.C. § 2254(d). Second, the lineup challenged by Johnson does not seem to violate *Ortiz*. That case does not require the government to produce a specific type of evidence, it must provide "merely some proof of the circumstances" of the identification. *Ortiz*, 90 N.Y.2d at 538. Unlike the government in *Ortiz*, which provided no evidence at all concerning the circumstances of the challenged identification procedure, the government here submitted both photographic evidence of the lineup and evidence as to the physical characteristics of the suspect and the fillers. Accordingly, the government's failure to introduce testimony as to how the eyewitnesses described the perpetrator at the time of the robbery does not render the lineup inadmissible under *Ortiz*.

Johnson also argues that the physical differences between himself and the fillers rendered the lineup unduly suggestive and entitles him to habeas relief. I disagree. Having reviewed a photograph of the lineup, *see* Stewart Decl. Ex. B, I agree with the state court's determination that it was not impermissibly suggestive or conducive to mistaken identification. Moreover, "reliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). Due process is not necessarily offended by a suggestive lineup; a witness who has viewed such a lineup may still identify the defendant at trial provided the in-court identification is independently reliable. Reliability is determined by considering the factors "set out in [*Neil v.*] *Biggers*, [409 U.S. 188 (1972)]" such as "the opportunity of the witness to view the criminal at the time of the crime, the witness'

degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Id.* These factors must then be weighed against "the corrupting effect of the suggestive identification itself," in order to determine whether the identification is so unreliable that its admission violates due process. *Id.*

In this case, the evidence reveals that all four of the Radio Shack employees who viewed the lineup had an ample opportunity to view the perpetrator in their respective stores. Johnson's suggestion that his "disguise" impeded their ability to observe him is belied by the surveillance photograph from the Liberty Avenue store. Stewart Decl. Ex. A. The disguise left plenty to be observed. Finally, as discussed above, there was no impermissible suggestiveness in the lineup itself that would undermine the reliability of the identification.

## CONCLUSION

For the reasons stated above, the petition is denied. As Johnson has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So ordered.

JOHN GLEESON, U.S.D.J.

Dated: Brooklyn, New York
        September 22, 2008